IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JASON L. TISDALE,<br><br>    Defendant. | Case No. 07-10142-05-JTM |

**MEMORANDUM AND ORDER**

Presently before the court is defendant Jason Tisdale's motion to suppress (Dkt. No. 194). For the following reasons, the court denies the motion.

*1. Procedural History*

Mr. Tisdale is charged in a superceding indictment with: (1) violation of the Racketeer Influenced and Corrupt Organization Act (RICO); (2) conspiracy to commit a RICO violation; (3) three counts of committing a violent crime in aide of racketeering; and (4) possession with intent to distribute more than five grams of crack cocaine.

The count charging Tisdale with the crack cocaine offense stems from a car stop that occurred on October 19, 2006. Tisdale was previously charged with this offense in case 06-CR-10236-01-JTM, which was dismissed without prejudice on August 7, 2007, after Tisdale was charged in the present case. Prior to the government's dismissal of the previous case, Tisdale filed a motion to suppress, which raise the same allegations raised in the current motion to

1

dismiss. On June 11, 2007, the court conducted a hearing on the motion to suppress and received evidence from both the government and Tisdale. After considering the evidence, this court denied the motion and issued a written order on June 19, 2007.

Although res judicata and collateral estoppel prohibit Tisdale from re-litigating the lawfulness of the October 19, 2006 incident, the court nonetheless re-examined the briefs submitted in the current case, as well as the transcript from the suppression hearing conducted in June 2007. Because the facts have not changed, and because the court is confident in the soundness of its earlier decision, the motion is denied once again, and the explanation is copied below.

## 2. Factual Background

In one count of a multi-count indictment, Tisdale is charged with knowingly possessing, with the intent to distribute, approximately five (5) grams of a mixture or substance containing a detectable amount of cocaine base (crack cocaine), in violation of 18 U.S.C. § 841(a)(1). Wichita Police Detective Brown, while working undercover, followed up on a narcotics investigation at a residence located at 1800 E. 23rd Street, Wichita, Kansas, on October 19, 2006. During Detective Brown's surveillance, he witnessed a red Saturn vehicle stop at the suspected residence. The female driver and a male passenger exited the vehicle, went into the residence for a few minutes, and returned to the vehicle. After the vehicle's occupants exited the residence and returned to the vehicle, they drove south on Minneapolis Street.

Detective Brown witnessed the driver of the vehicle fail to signal while turning onto Minnesota Street and thereafter when it failed to signal while turning eastbound onto 21st Street.

When he witnessed the traffic infractions, Detective Brown requested assistance to make a traffic stop.

Officer Kimble responded to Detective Brown's request. He identified the Saturn and made a traffic stop on the car in the vicinity of 2300 E. Stadium. After Officer Kimble used both his lights and siren, the Saturn pulled over. Officer Kimble identified the driver as Robin Tisdale, and the passenger as defendant, Jason Tisdale. Ms. Tisdale showed the proper identification and proof of insurance.

Kimble told the driver to remain in the car. Subsequently, he contacted Brown, who advised that he and another officer were "sitting off a location where there was drug activity present." He also told Kimble "to attempt to search the vehicle and investigate further as possible drug activity."

After performing a records check, which showed that neither the driver nor the passenger were wanted on warrants, Officer Kimble wrote a traffic citation. When he approached the vehicle, he ordered Ms. Tisdale to exit the car. Ms. Tisdale walked to the front of the officer's patrol car, where he provided the citation. When Ms. Tisdale returned to her car, Officer Kimble told her that before she left he would like to talk to her about a few things, if he could. She stopped and turned to the officer. He asked her if there were any guns or drugs in the vehicle, to which she responded, "No." The officer then requested permission to search the car, which Ms. Tisdale gave.

Officer Gerdes arrived as a back-up during the stop. Officer Kimble signaled to Officer Gerdes that he intended to search the vehicle. Officer Kimble asked Ms. Tisdale to empty her pockets on the hood of his patrol car, but nothing was found. Officer Kimble then told her that

he was going to search the car and requested that she stand next to his patrol car.

When Ms. Tisdale stood by the front of Officer Kimble's patrol car, Officer Gerdes went to the passenger side of the vehicle and asked the defendant to step from the car. The defendant exited the car and walked about twelve feet from the vehicle as Officer Gerdes followed. Officer Gerdes then asked the defendant if he could pat him down. The defendant consented to the search. When weapons were not found, the officer asked defendant to sit down on the curb. Officer Gerdes walked around the defendant and then stood in the street, facing defendant. Officer Gerdes noticed four baggies on the ground, which he believed to contain crack cocaine and marijuana. The baggies were in the path where he and defendant walked, approximately ten feet from the vehicle. The defendant was placed in custody at approximately 2:30 p.m.

Defendant received his rights per *Miranda* and declined to speak with the officers. He was told that he was arrested for the drugs found on the ground next to him and placed into a patrol car.

### 3. Standard of Review and Conclusions of Law

Specifically, Mr. Tisdale challenges the stop of the vehicle, the seizure of his person, and the resulting search.

#### A. The Traffic Stop

"Because an ordinary traffic stop is more analogous to an investigative detention than a custodial arrest," traffic stops are analyzed under the principles of *Terry v. Ohio*, 392 U.S. 1 (1968). Under *Terry*, a traffic stop is reasonable if "the officer's action was justified at its inception, and [if] it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. A "traffic stop is reasonable under the

Fourth Amendment at its inception if the officer has either (1) probable cause to believe a traffic violation has occurred . . . or (2) a reasonable articulable suspicion that 'this particular motorist violated any one of the multiple of applicable traffic and equipment regulations of the jurisdiction.'" *United States v. Ozbirn*, 189 F.3d 1194, 1197 (10th Cir. 1999) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10thCir. 1995) (en banc)).

In this case, Detective Brown witnessed the driver's failure to signal at a traffic intersection on two occasions, once when it turned southbound onto Minnesota and again when it turned east onto 21st Street. These failures constitute a violation of Kansas law, specifically, K.S.A. § 8-1548, which requires a driver to signal at least one hundred (100) feet before turning. When the driver failed to signal, the officer had probable cause to believe a traffic violation had occurred and therefore, allowed the officer to initiate a traffic stop.

Once a stop occurs, the detention must not last "longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). It appears that the traffic stop was reasonable in light of the fact that it lasted long enough for the officer to approach the vehicle, speak to the driver regarding the infraction, request the driver's license and proof of insurance, run a records check, write a citation, request the driver to step from the car, and explain the citation to the driver. In total, the stop lasted twenty-five minutes, which did not exceed the length required to effectuate the purpose of the stop. Therefore, the stop was consistent with defendant's Fourth Amendment's rights.

### B. The Terry Frisk

Additionally, Tisdale argues that the *Terry* frisk was unreasonable because the officer

had no articulable suspicion of criminal activity.

First, "[a]n officer may order the driver and passengers out of the vehicle in the interest of officer safety, even in the absence of any particularized suspicion of personal danger." *United States v. Holt*, 264 F.3d 1215, 1222 (10th Cir. 2001). Ms. Tisdale consented to the search of the vehicle. The officer's request for defendant to exit the vehicle was reasonable, and made the environment safer for the officers involved during the search of the car.

With respect to the search of defendant, the defendant gave valid consent. "Consent to search is valid if it is voluntarily given." *United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir. 1986). The government must show that there were no threats, promises, or inducements made, and that the consent was freely and intelligently given. *United States v. Orrego-Fernandez*, 78 F.3d 1497, 1505 (10th Cir. 1996). Here, the officer did not threaten the defendant, but asked if he could pat down the defendant for weapons. The defendant responded that a pat down would be "okay." Therefore, the consent to search the defendant was valid.

Notwithstanding the defendant's valid consent, in order to comport with the Fourth Amendment, a search must have been "reasonably related in scope" to the basis for the stop. *United States. v. Hinshaw*, 235 F.3d 565, 570 (10th Cir. 2000). The Tenth Circuit has held that an officer may conduct a pat-down search if he or she "harbors an articulable and reasonable suspicion that the person is armed and dangerous." *Id*. On the facts of this case, Officer Gerdes knew that Tisdale had visited a suspected gang/drug house where undercover gang/narcotics officers witnessed defendant. The officer also knew that throughout his eighteen years with the Wichita Police Department, those who frequent gang/drug houses may also carry firearms. Based on the facts, it was reasonable for the officer to search the defendant because the search was

reasonably related in scope to the basis for the stop, namely, the traffic violations and the fact that the vehicle was recently seen at a suspected gang/drug house. The facts, taken together, demonstrated reasonable suspicion that defendant might have been armed and dangerous. *See United States v. Garcia*, 459 F.3d 1059, 1066-67 (10th Cir. 2006) (noting the Circuit has held that a connection with drug transactions can support a reasonable suspicion that a suspect is armed and dangerous.)

Finally, the seizure of the bags found near defendant fits within the "abandoned property" exception to the warrant requirement. When an individual abandons property, the individual can no longer have an expectation of privacy in the given property. *United States v. Trimble*, 986 F.2d 394, 399 (10th Cir. 1993). When determining whether an individual voluntarily has abandoned property, the relevant question is whether the "individual [can] retain an expectation of privacy in the property that is the subject of the abandonment?" *Id.* at 399. In this case, Tisdale dropped the bags of crack cocaine and marijuana on the ground, which demonstrated his intent to separate himself from the given property. Therefore, Officer Gerdes' seizure of the abandoned bags containing drugs did not constitute an illegal search and seizure, and the motion to suppress must be denied.

IT IS ACCORDINGLY ORDERED this 25th day of April, 2008 that Defendant Jason Tisdale's motion to suppress evidence (Dkt. No. 194) is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE
